IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| BOBBY JOHNSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1306-JDT-egb |
| | ) | |
| CORIZON HEALTH, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET,
DENYING MOTION FOR A PRELIMINARY INJUNCTION,
DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On November 6, 2014, Plaintiff, Bobby Johnson a/k/a Bobbie Johnson, Tennessee Department of Correction ("TDOC") prisoner number 257570, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.)[1] The Court issued an order on November 7, 2014, that granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Corizon Health, Inc. ("Corizon Health"); Corizon, Inc. ("Corizon"); Dr. Carl Keldie, the national medical director for Corizon Health and Corizon in November and December 2012; Becky Pinney, the chief nursing officer for Corizon Health and Corizon in November and December 2012; Drs. John Louis

---

[1] The Clerk is directed to modify the docket to include the alternative spelling of Plaintiff's first name, which was obtained from the TDOC Felony Offender Information database, https://apps.tn.gov/foil-app/search.jsp.

Hochberg and Vernita Duncan, both of whom are alleged to be the NWCX Medical Director; Amanda Collins, the Chief Nursing Officer at the NWCX; Samantha Phillips, the NWCX Health Services Administrator; the State of Tennessee; the TDOC; former NWCX Warden Henry Steward; NWCX Deputy Warden Brad Poole; and NWCX Associate Warden Melvin Tirey. Each of the individual Defendants is sued in his or her individual and official capacities. (*See* ECF No. 1 at 1.)

On November 26, 2014, Plaintiff filed a motion for preliminary injunctive relief (ECF No. 5) and a first amended complaint that appears to be intended to supplement, rather than to supersede, the original complaint (ECF No. 6). The Clerk shall record the following additional Defendants, each of whom is sued only in his or her official capacity: TDOC Commissioner Derrick Schofield, TDOC Deputy Commissioners of Operations Catherine Posey and Jim Thrasher; TDOC Commissioner of Operations Reuben Hodge; TDOC Director of Health Services Donna K. White; and TDOC Medical Director of Clinical Services Lester Lewis.[2] On December 18, 2014, Plaintiff filed a declaration in support of his motion for a preliminary injunction. (ECF No. 8.)

Under Rule 65(d)(1) of the Federal Rules of Civil Procedure:

Every order granting an injunction and every restraining order must:

(A)  state the reasons why it is granted;

(B)  state its terms specifically; and

(C)  describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

---

[2] While the caption of the amended complaint recites that Defendant Lewis is sued in both his individual and official capacity (*id.* at 1), the body of the document makes it clear that, like the others named in the amended complaint, he is sued only in his official capacity.

Fed. R. Civ. P. 65(d)(1). Parties seeking preliminary injunctive relief must submit a proposed order. Local Rule 7.2(a)(1)(A).

Plaintiff has not submitted a proposed order, and his complaint is not sufficiently specific to permit the Court to craft an appropriate order. An order merely directing one or more Defendants to provide appropriate medical care to Plaintiff is too vague and ambiguous to satisfy Rule 65(d)(1)(B). The motion for preliminary injunctive relief is DENIED.

The original complaint alleges that Plaintiff is a fifty-year-old male with a history of high blood pressure. (ECF No. 1 at 7, ¶ 15.) Between August 2011 and August 2012, Plaintiff had been prescribed "clonidine hcl. 0.2mg," which properly treated his condition. (*Id.* ¶ 17.) On March 22, 2013, when Plaintiff went to the medication window to pick up his medication, he was given the following new medications: Nifedipine 90 mg; Hydrochlorothiazide; and Lisinopril 10 mg. (*Id.* at 8, ¶ 18.) After he had taken those medications for four days, "Plaintiff began to experience a rash all over his body and bumps over his face, having sweats and aches in his chest area, unable to sleep or rest." (*Id.* ¶¶ 19-20.) The symptoms continued for several days. (*Id.* ¶ 21.)

On April 9, 2013, Plaintiff requested medical treatment and filled out an emergency sick-call request to see Defendant Phillips. He received no response. (*Id.* ¶ 21.) On April 16, 2013, Plaintiff received a sick-call pass to see Defendant Collins. After describing his symptoms, Collins conducted no tests or evaluation of the chest pain that Plaintiff had been experiencing. Instead, she asked Plaintiff whether he had been exercising and taking his medication as directed. (*Id.* ¶ 22.)

Plaintiff returned to sick-call on April 19, 2013, where he was seen by "an Asian looking nurse," who "refused to perform any type of tests, evaluation or analysis of the chronic chest pain Plaintiff was experiencing." (*Id.* ¶ 23.)

At 4:00 a.m. on April 30, 2013, Plaintiff was taken by officers to the infirmary because he was suffering from "severe chest pains, numbness on the left side, top left shoulder, left side arm throughout his fingertips." (*Id.* at 9, ¶ 24.) "The medical staff did not perform any type of tests, evaluation or analysis of the chronic chest pain Plaintiff was experiencing." (*Id.*) Plaintiff was given a nitroglycerin pill and one aspirin and was kept overnight for observation. (*Id.*) In the morning of April 30, 2013, Plaintiff was seen by Defendant Hochberg, who did not perform any tests and who ignored Plaintiff's requests for treatment. (*Id.* ¶ 25.) Later that morning, Plaintiff was given a pass to the clinic for a chest x-ray. However, no x-ray was performed, and Plaintiff was ultimately told he was on a list to see the doctor. (*Id.* ¶ 26.)

On May 5, 2013, Plaintiff's condition worsened when he tried to exercise as the medical staff had instructed. (*Id.* ¶ 27.) On May 6, 2013, Plaintiff signed up for sick call and spoke to a nurse, who refused to perform any tests. The nurse told Plaintiff that he would see the doctor the next day. (*Id.* ¶ 28.)

On May 7, 2013, Plaintiff was seen by Defendant Hochberg, who agreed that his medication needed to be tested. (*Id.* at 10, ¶ 29.) Plaintiff retrieved his medicine and gave it to Hochberg, who assured Plaintiff that it was being sent to the laboratory for testing and that he should pick up his new medication at the window in a couple of days. (*Id.* ¶ 30.) When Plaintiff went to the medication window a few days later, a nurse told him that his medication had not been sent to the laboratory for testing. (*Id.* ¶ 31.) Plaintiff received a pass to the clinic on May 16, 2013, but, when he arrived, he was turned away by an officer, who told him that "your treatment is over and you will not be rescheduled." (*Id.* ¶ 32.) On May 17, 2013, Plaintiff received a pass to the clinic "but

4

received no relief for the symptoms that he was experiencing." (*Id.* ¶ 33.) On August 15, 2013, Plaintiff received a pass to the clinic for lab work. (*Id.* ¶ 34.)

On January 14, 2014, Plaintiff received a sick-call pass to visit with Defendant Collins. Collins asked Plaintiff whether he had been exercising and taking his medication, and Plaintiff replied that the blood pressure medication caused him to suffer adverse side effects. Collins did not perform any tests or evaluation of Plaintiff's chest pain. (*Id.* ¶ 35.) Plaintiff visited the clinic on January 17, 2014, and January 19, 2014, where his blood pressure was checked. (*Id.* at 11, ¶¶ 36-37.)

Defendants allegedly were put on notice through the grievance process that Plaintiff was not receiving adequate treatment for his high blood pressure and had developed severe reactions to certain medications. (*Id.* ¶¶ 38-39.) Plaintiff seeks compensatory damages in the amount of $3.6 million and punitive damages. (*Id.* at 16.)

The amended complaint, which seeks only prospective injunctive relief against various TDOC officials, alleges that the TDOC "has failed to develop, implement or enforce a coherent policy providing for the treatment of inmates with adverse reaction to prescribed medications." (ECF No. 6 at 4, ¶ 7.) The TDOC Defendants allegedly also "failed to hire and train competent medical staff able to diagnose and treat inmates with serious and emergent medical conditions like obvious pain and discomforts associated with an adverse reaction to prescribed medications." (*Id.* ¶ 9.) Unspecified Defendants allegedly had a policy, practice or custom of refusing or delaying necessary medical testing and treatment to inmates at the NWCX (*id.* at 5, ¶ 10), the motivation for which was financial gain (*id.* ¶ 11).

5

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before

7

it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Plaintiff's claims against Defendants Stewart, Poole and Tirey in their official capacities is brought against the State of Tennessee. Plaintiff's claim against Defendants Keldie, Pinney, Hochberg, Duncan, Collins and Phillips in their official capacities is brought against Corizon Health or Corizon.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of*

---

[3] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

*Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. The Court DISMISSES Plaintiff's claims against the State of Tennessee, the TDOC, and Defendants Stewart, Poole and Tirey in their official capacities pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

Defendants Schofield, Posey, Thrasher, Hodge, White and Lewis are sued in their official capacities for prospective injunctive relief. *See Ex parte Young,* 209 U.S. 123, 160 (1908). Because the complaint and the amended complaint fail to specify the nature of that relief, Plaintiff's claims against those parties are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The complaint contains no factual allegations against Defendants Keldie, Pinney, Duncan, Steward, Poole and Tirey. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In addition, Defendants Keldie, Pinney and Duncan cannot be held liable because of their senior management positions at Corizon Health and Corizon, and Defendants Steward, Poole and

9

Tirey cannot be held liable because of their respective positions as NWCX Warden, NWCX Deputy Warden and NWCX Associate Warden. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendants Steward, Poole and Tirey had any personal involvement in Plaintiff's treatment.

Likewise, even if it were assumed that Defendants Keldie, Pinney and Duncan had some responsibility for the policies of Corizon Health and Corizon—which the complaint does not clearly allege—they cannot be held liable to Plaintiff for money damages because they were not personally involved in the events at issue. *See Heyerman v. Cnty. of Calhoun,* 680 F.3d 642, 647-48 (6th Cir. 2012); *Phillips v. Roane Cnty., Tenn.,* 534 F.3d 531, 544-45 (6th Cir. 2008) ("The Estate's general allegations that the correctional officers and paramedics were not properly trained are more

10

appropriately submitted as evidence to support a failure-to-train theory against the municipality itself, and not the supervisors in their individual capacities. While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, the Estate must point to a specific action of each individual supervisor to defeat a qualified immunity claim. And because the Estate has not advanced any specific allegations against Yager, Haggard, or Wright, we dismiss the case against these three defendants.").[4]

The complaint does not allege a viable claim against Corizon Health or Corizon. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Corizon Health and Corizon "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against Corizon Health or Corizon, Plaintiff "must show that a policy or

---

[4] At most, the policymaking roles of Keldie, Pinney and Duncan might support an award of damages against Corizon or Corizon Health. *Harvey v. Campbell Cnty., Tenn.,* 453 F. App'x 557, 563 (6th Cir. 2011) ("To the extent plaintiffs have adduced evidence supporting findings that McClellan or Scott was a County policymaker on matters of training and was so deliberately indifferent to the need for more comprehensive training as to render the training deficiency a matter of *de facto* County policy, he would be liable, if at all, in his *official* capacity, i.e., rendering the County liable.").

well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

The complaint does not adequately allege that Plaintiff suffered any injury because of an unconstitutional policy or custom of Corizon Health or Corizon. The allegation that unspecified Defendants attempted to maximize profits is insufficient to establish that Corizon Health or Corizon had an unconstitutional policy, that the policy was applied in Plaintiff's case, and that the policy was a "moving force" behind the denial of treatment. *Jackson v. Corr. Corp. of Am.,* No. 13-1102-JDT-egb, 2013 WL 3070778, at *4-5 (W.D. Tenn. June 17, 2013); *Ezell v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (prisoner's "allegations that the purported policies existed at CMS and that these policies were directly responsible for his alleged lack of medical care are conclusory and are not buttressed by any factual allegations. Although the plaintiff speculates that medical care is denied to inmates by CMS for monetary, non-medical reasons, he provides no factual allegations supporting this speculation. . . . Further, the plaintiff has not set forth any factual allegations supporting the conclusion that any such policies were the moving force behind the alleged deficiencies in his own medical treatment as opposed to being the result of actions of individual actors. Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss.") (report and recommendation), *adopted*, 2012 WL 2601936 (M.D. Tenn. July 5, 2012); *Moffat v. Mich. Dep't of Corr.*, No. 09-14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), *adopted*, 2010 WL 3905354 (E.D. Mich. Sept. 27, 2010); *Crawford*

12

*v. Mich. Dep't of Corr.*, No. 2:09-cv-7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); *see also Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). The complaint fails to set forth any facts suggesting that the execution of this alleged policy, rather than individual malfeasance on the part of medical staff, caused the withholding of treatment.

"In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal*'s standards strictly." *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). "Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief . . . ." *Ezell,* 2012 WL 2601940, at *5. The allegations that unspecified Defendants failed "to promulgate and implement policies to provide appropriate medical care to inmates with serious medical and/or emergent medical conditions like obvious pain and discomforts associated with a reaction to prescribed medications" (ECF No. 1 at 12, ¶ 43), and that defendants "failed to hire and train competent medical staff" (*id.* ¶ 44), are entirely conclusory and are insufficient to identify a Corizon Health or Corizon policy and tie it to Plaintiff's injuries. *Ezell*, 2012 WL 2601940, at *5.

Portions of Plaintiff's complaint are time barred, including his claim arising from the change in his medication in early 2013. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions

arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a)(3). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). The running of the limitations period is tolled while a prisoner exhausts his administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). The events described in ¶¶ 16-34 of the original complaint occurred well more than one year before Plaintiff signed his complaint and, therefore, any claims arising from those incidents is time barred.

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay

14

person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Alternatively, where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (internal quotation marks and alteration omitted); *see also Santiago*, 734 F.3d at 591 ("In a case like this, involving a claim based on the prison's failure to treat a condition adequately, medical proof is necessary to assess whether the delay caused a serious medical injury." (internal quotation marks omitted)). "The 'verifying medical evidence' requirement is relevant [only] to those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore,* 390 F.3d at 898. The Court will assume, for purposes of this order, that Plaintiff's high blood pressure constituted a serious medical need.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76,

79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). Each defendant's subjective knowledge must be assessed separately, *Rouster v. Cnty. of Saginaw,* 749 F.3d 437, 447 (6th Cir. 2014), and information available to one defendant may not automatically be imputed to other defendants, *Gray v. City of Detroit,* 399 F.3d 612, 616 (6th Cir. 2005).

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously,

16

to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

With the possible exception of the time-barred portions of the complaint, Plaintiff does not allege that any member of the NWCX medical staff was deliberately indifferent to his needs. The only allegations that fall within the limitations period involve a visit with Defendant Collins in January 2014 and two blood-pressure checks that were performed that month. (ECF No. 1 at 11, ¶¶ 35-37.) At most, Defendant Collins's failure to order tests amounts to negligence. There is no allegation that any member of the medical staff was aware of the seriousness of Plaintiff's condition and recklessly disregarded that risk.

Therefore, Plaintiff's complaint and amended complaint are DISMISSED for failure to state a claim on which relief may be granted, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 511 F. App'x at 5; *Gonzalez-Gonzalez v.*

17

*United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

The Court cannot conclude that any amendment to Plaintiff's complaint against the individual Defendants at the NWCX would be futile as a matter of law. Therefore, leave to file a second amended complaint is GRANTED. Any amendment must be filed within twenty-eight (28) days after the date of this order.

Plaintiff is advised that any second amended complaint will supersede the complaint and amended complaint and must be complete in itself without reference to the prior pleadings. The text of the second amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the second amended complaint and must be attached to the amendment. All claims alleged in a second amended complaint must arise from the facts alleged in the original or amended complaints. Plaintiff may add additional defendants provided that the claims against the new parties arise from the acts and omissions in the original and amended complaints. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Plaintiff fails to file a

18

second amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE