IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1306-JDT-egb |
| | ) | |
| CORIZON HEALTH, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DISMISSING SECOND AMENDED COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

The *pro se* Plaintiff, Bobby Johnson a/k/a Bobbie Johnson, filed this action pursuant to 42 U.S.C. § 1983 on November 6, 2014, while he was an inmate at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee. (ECF No. 1.)[1] He complains that the medical treatment he received at the NWCX was inadequate in violation of the Eighth Amendment. The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On November 26, 2014,

---

[1] The Defendants named in the original complaint were Corizon Health, Inc.; Corizon, Inc.; Dr. Carl Keldie, the national medical director for Corizon in November and December 2012; Becky Pinney, the chief nursing officer for Corizon in November and December 2012; Dr. John Louis Hochberg and Dr. Vernita Duncan, both of whom were alleged to be the NWCX Medical Director; Amanda Collins, the Chief Nursing Officer at the NWCX; Samantha Phillips, the NWCX Health Services Administrator; the State of Tennessee; the Tennessee Department of Correction (TDOC); former NWCX Warden Henry Steward; NWCX Deputy Warden Brad Poole; and NWCX Associate Warden Melvin Tirey.

Plaintiff filed a first amendment to the complaint in which he named several additional Defendants.[2] (ECF No. 6.) On February 10, 2015, the Court issued an order dismissing the complaint and the first amendment for failure to state a claim but granted leave to file a second amended complaint. (ECF No. 10.) Plaintiff filed a timely second amended complaint on February 27, 2015. (ECF No. 11.) On April 16, 2015, Plaintiff notified the Court he had been released from prison and provided a new address. (ECF No. 17.)

The Corizon Defendants, which are also named as parties in the second amended complaint, filed an answer (ECF No. 14) and a motion for summary judgment (ECF No. 22).[3] Plaintiff did not respond, and Corizon's motion for summary judgment was granted. (ECF No. 24.)

In the prior order of dismissal, the Court found that all of Plaintiff's claims arising before November 6, 2013 were time barred. (ECF No. 10 at 13-14.) The second amended complaint only concerns Plaintiff's medical treatment that occurred from January 14, 2014, through December 11, 2014. The second amended complaint again names as Defendants the TDOC; NWCX Chief Nursing Officer Amanda Collins; former TDOC Commissioner Derrick Schofield; former NWCX Warden Henry Steward; NWCX Deputy Warden Brad

---

[2] The additional Defendants named in Plaintiff's first amendment were former TDOC Commissioner Derrick Schofield; TDOC Deputy Commissioners of Operations Catherine Posey and Jim Thrasher; TDOC Commissioner of Operations Reuben Hodge; TDOC Director of Health Services Donna K. White; and TDOC Medical Director of Clinical Services Lester Lewis.

[3] It is unclear how why Corizon responded to the second amended complaint, as no process has been issued in this case for any Defendant.

Poole; and NWCX Associate Warden Melvin Tirey. Additional Defendants named in the second amended complaint are Dr. First Name Unknown K, a physician at the NWCX; Tommie Hamilton, a Family Nurse Practitioner (FNP) at the NWCX; and Recie Yanders, a health administrator at the NWCX.

Plaintiff does not expressly state in the second amended complaint whether the Defendants are sued in their individual capacities in addition to their official capacities. However, because he seeks compensatory and punitive damages (ECF No. 11 at 14), the Court will construe the complaint as asserting both official and individual capacity claims.

Plaintiff's second amended complaint alleges that he received a sick-call pass to visit Defendant Collins on January 14, 2014. (*Id.* at 6-7, ¶ 14.) Collins allegedly asked Plaintiff whether he had been exercising and taking his medication, and Plaintiff replied that the blood pressure medication caused him to suffer severe chest and stomach pains and other unspecified adverse side effects. (*Id.*) However, Collins allegedly did not perform any tests or evaluation of Plaintiff's complaints, even though he explained that his symptoms included difficulty breathing and the inability to perform normal daily activities. (*Id.* at 7, ¶ 15.) Although Collins told Plaintiff she would refer him to see a doctor, he states he did not see a doctor until October 2, 2014. (*Id.*)

Plaintiff alleges he was called to the clinic on January 17, 2014, and January 19, 2014, where his blood pressure was checked. (*Id.*, ¶ 16.)

Plaintiff states that he filed a grievance against Collins on April 17, 2014 for her failure to refer him to a doctor and her failure to properly evaluate his complaints or to order

3

necessary tests. (*Id.* ¶ 17.) Defendant Yanders allegedly reviewed the grievance but ignored Plaintiff's requests for medical attention. (*Id.*)

Plaintiff alleges he received a sick call pass to see Defendant Dr. K on October 2, 2014. (*Id.* at 7, ¶ 18.) Dr. K checked Plaintiff's blood pressure, listened to his heart and had him perform "recommended breathing evaluations." (*Id.*) Dr. K allegedly reviewed Plaintiff's medical records and told him that when he got out of prison Plaintiff should look at the records before they were archived after thirty days. (*Id.*) However, Plaintiff alleges Dr. K did not do any other tests or evaluations even though Plaintiff explained to him about the pain in his chest and left shoulder and numbness in his fingertips and forearm. (*Id.* at 7-8, ¶ 18.)

Plaintiff states he was called to the clinic on October 6, 2014 and November 6, 2014, where his blood pressure was checked. (*Id.* at 8, ¶ 19.)

Plaintiff further alleges he received a sick call pass on December 11, 2014, and was seen by Defendant FNP Hamilton. (*Id.* ¶ 20.) Hamilton checked Plaintiff's blood pressure and asked another nurse to listen to his heart, and that nurse allegedly told Plaintiff his heart "has a single beat unlike what a regular normal heart has." (*Id.*) Hamilton then allegedly told Plaintiff he had "a serious case of aorta regurgitation." (*Id.*) However, Plaintiff states Hamilton performed no other tests or evaluations even after he explained his ongoing symptoms. (*Id.*)

Plaintiff asserts that on June 7, 2014, he requested emergency medical treatment while the prison was on lockdown. (*Id.* at 11, ¶ 34.) Plaintiff was taken to the clinic in a

4

wheelchair where he states that he described his symptoms to an unspecified nurse, including sharp chest and left side pain and numbness in the fingertips, left forearm and left shoulder. (*Id.*) The nurse allegedly performed an EKG and checked Plaintiff's blood pressure, which was 150/100; she gave Plaintiff an aspirin and a nitroglycerin pill. (*Id.*) Shortly thereafter, when the facility came off lockdown, Plaintiff alleges he approached Defendants Steward and Tirey during their daily inspections and had a conversation with Steward concerning the failure to treat his medical problems. (*Id.* ¶ 35.) However, Steward responded there was nothing he could do and Plaintiff should go to the nurses at the clinic. (*Id.* ¶ 36.)

Plaintiff alleges the grievance he filed against Defendant Collins on April 17, 2014, was exhausted through the former Warden, Defendant Steward, and the former TDOC Commisioner, Defendant Schofield. (*Id.* at 11, ¶ 33.) Plaintiff further alleges the grievance put Defendants Steward, Tirey and Poole on notice of the inadequate medical care he was receiving. (*Id.* at 12, ¶ 37.) He asserts these Defendants had a "personal role in implementing or enforcing or ignoring" a "policy of providing only cursory medical treatment to inmates." (*Id.*) Plaintiff further asserts Defendants Steward, Tirey and Poole each had the necessary "personal involvement in decisions that he otherwise authorized, approved,or knowingly acquiesced in unconstitutional conduct, given free reign to medical staff . . . indicating they failed their duty to oversee and correct the problems. . . ." (*Id.* ¶ 38.)

In several respects, the second amended complaint suffers from the same deficiencies as the original and amended complaints.[4] As stated in the prior order, Plaintiff's claims against the TDOC and his official capacity claims against Defendants Schofield, Steward, Poole and Tirey are treated as claims against the State of Tennessee. As such, they are barred by the Eleventh Amendment's grant of sovereign immunity. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also* Tenn. Code Ann. § 20-13-102(a).

Plaintiff's official capacity claims against the NWCX medical staff, Defendants Collins, Dr. K, Hamilton and Yanders, also fail to state a valid claim. The Court granted Corizon's motion for summary judgment on the ground that the medical services provider's contract with TDOC was terminated in September 2013; therefore, the company was not involved in Plaintiff's medical care after that date. (ECF No. 24 at 3.) Plaintiff has not identified the corporation that provided medical services to inmates at the NWCX for the time period referenced in the second amended complaint. Therefore, he can point to no official policy or custom of any such corporation that caused his injury. *See Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (private corporation that provides medical care to prisoners can be sued under § 1983); *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (private corporation

---

[4] The general standards for evaluating a prisoner's complaint were set out in the prior order of dismissal and will not be reiterated here.

providing medical care for prisoners cannot be liable under § 1983 unless it is shown that a policy or custom of the corporation was behind the deprivation of rights).

Plaintiff has sued Defendants Schofield, Steward, Poole, Tirey and Yanders because of their respective positions as former TDOC Commissioner, former NWCX Warden, NWCX Deputy Warden, NWCX Associate Warden and NWCX health administrator. He alleges that their failure to take action in response to his grievances about alleged inadequate medical care is sufficient to support liability under § 1983.

As stated in the prior order of dismissal, in order for supervisors to be held liable under § 1983, a plaintiff must plead that "that each Government-official defendant, through the official's own official actions, violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *Respondeat superior* is not enough. *Id.*; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008). The knowledge gained through an inmate grievance or complaint ordinarily does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Plaintiff has not alleged sufficient personal involvement on the part of Schofield, Steward, Poole or Tirey to support liability. Plaintiff does allege that he actually spoke to Defendant Steward on one occasion about the need for additional care and that Steward told him to go to the clinic. However, Plaintiff's description of that one brief encounter is not enough to support a claim that Steward was personally involved in the alleged denial of medical care.

The second amended complaint also fails to state an Eighth Amendment claim against Defendants Collins, Hamilton, or Dr. K. An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim for inadequate medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted).

To establish the subjective component of an Eighth Amendment medical claim, a prisoner must demonstrate that the prison official acted with "deliberate indifference" to a

substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray,

9

or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

Plaintiff does not allege that he did not receive *any* medical treatment during the period in question, as he was seen by nurses, a physician, and a nurse practitioner. He complains, in essence, because he was not provided with additional tests he thought were needed. The failure of Defendants Collins, Dr. K, and Hamilton to order additional tests for Plaintiff amounts, at most, to medical malpractice, not deliberate indifference. Plaintiff also alleges that Defendant Collins told him on January 14, 2014, that she would refer him to see a doctor, but he did not actually see a doctor until October 2, 2014. However, Plaintiff does not sufficiently allege that the eight-month delay in seeing a doctor caused his condition to worsen. This allegation against Collins also does not rise to the level of deliberate indifference.

For the foregoing reasons, Plaintiff's second amended complaint is DISMISSED for failure to state a claim on which relief may be granted, under 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

It is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24, that an appeal by Plaintiff in this case would not be taken in good faith. Leave to appeal *in forma pauperis* is, therefore, DENIED.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike"

shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE